| 96 | 347 |
| 153 | 487 |
| 96 | 347 |
| 182 | 284 |
| 96 | 347 |
| 22 SC | 431 |

# Appeal of the Brownsville Deposit and Discount Bank.

While it has been authoritatively settled that liens divested by a sale made by the assignee of an insolvent, in pursuance of an order of court, cease to draw interest beyond the date of confirmation of the sale to be paid out of the proceeds, yet, if the creditor whose lien is thus divested, and who is entitled to receive his money, is not then paid the same, and it is kept or invested afterwards so as to draw interest, it is interest produced by the money to which he was justly entitled, and he can properly claim the interest thus produced.

November 17th 1880. Before MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ. SHARSWOOD, C. J., absent.

Appeal from the Court of Common Pleas of *Washington county*: Of October and November Term 1880, No. 142.

Appeal of the Brownsville Deposit and Discount Bank and the Washington Savings Bank from the decree of the Court of Common Pleas of Washington county distributing the assigned estate of Azariah Crow.

Azariah Crow made an assignment for the benefit of his creditors, his estate consisting of nine several tracts and lots of land and some personal property. The latter being insufficient for the payment of his debts, his assignee made application to sell the land divested of liens under the provisions of the Act of February 17th

1876, Pamph. L. 4. The court granted an order of sale on the usual terms, to wit, one-third of the purchase-money payable on confirmation of sale; one-third thereof with interest from the date of confirmation, in six months thereafter, and the remaining one-third thereof, with interest from date of confirmation, in twelve months thereafter. In pursuance of said order seven of the said tracts and lots were sold on the prescribed terms. The assignees made report of the sales, which were confirmed by the court August 26th 1878. The assignees then filed their account, charging themselves with the proceeds of sales, taking credit for deferred payments, which was confirmed. Auditors were then appointed to determine claims and prepare schedules of distribution. The total amount of sales of realty, collected and uncollected, less the proper expenses, was $17,992.57, which the auditors were allowed to distribute. This sum embraced only the principal, no interest on the deferred payments being included. This sum was applied by the auditors to the various judgments in their order, including the several judgments of the Washington Savings Bank and a portion of the judgment of the Brownsville Deposit and Discount Bank, with interest to date of confirmation of sale. The latter judgment amounted, with interest, on the day of confirmation of sale, to $4911.68. The real estate fund above stated paid off this amount, $4121.74, leaving a balance to be paid by sale of the remaining real estate. No interest on the purchase-money was included in this distribution. This report was confirmed, without exceptions, May 19th 1879.

Subsequently the remaining real estate was sold by order of the court for cash. An account was settled and confirmed. In this account the assignees charged themselves with the interest accruing on the deferred payments of purchase-money, together with royalty on coal mined and rents, amounting to $1151.13, which was made up as follows: Interest on purchase-money, $676.07; rent, $50; royalty on coal mined, $425.06. On the confirmation of this second account another distribution was made by the auditors. The following are the material portions of the report of the auditors, Boyd Crumrine and L. R. Smith, Esqs.:

" The account (to which no exceptions were filed) now before us embraces a balance of the assigned estate not included in a former account by the same assignees, filed and confirmed on October 14th 1878. The fund embraced in the said former account was distributed by us, as auditors, by a report filed and confirmed nisi May 19th 1879, which is the report hereinafter occasionally referred to.

" 1. The point was made in behalf of certain judgment-creditors whose liens had received out of former distribution payment in full of debt and interest up to the confirmation of the sale of the real estate which produces the fund, that such creditors were entitled to

receive out of the present real estate fund interest upon the principal of the debt after the date of confirmation until they actually received payment. This claim was made especially by I. Y. Hamilton, Esq., representing judgments of James W. Kuntz, in trust.

"In our former report the point was decided that the lien-creditors could receive interest only to the date of confirmation of sale, which was August 26th 1878. The distribution was not made, however, until May 19th 1879, while we find as a fact that payment was not actually made to the distributees until on or about July 10th 1879. As a matter of fact, then, the lien-creditors participating in that distribution lost the interest upon their money for almost one year, which was quite an item on some of the judgments.

" The decision of your auditors as to this point was not excepted to, and was .soon afterwards shown to be correct by three cases decided by the Supreme Court, published for the first time on July 10th 1879, and hereafter referred to.

" The land of Azariah Crow, from which the fund at present for distribution was realized, had not been sold at the date of .the former report—was not sold and the sale confirmed until August 21st 1879, as appears from the returns of sale. And the claim is pressed upon us with much force that the lien-creditors who did not receive their money out of the last distribution until say July 10th 1879, and lost the interest thereon from August 26th 1878 to the date of payment, should now receive interest for that period out of the fund now distributed, on the ground that though the sale of the land from which the former fund was realized discharged their liens from that land, yet the liens remained undischarged from the remaining lands of the same debtor subsequently sold, and so remaining, protect the lien-creditors' at least to the extent of the interest lost.

" The point undoubtedly is of great weight. For it would seem to be correct that the liens of the judgments were discharged on August 26th 1879, only from the lands of the debtor at that date sold, and not from the lands remaining unsold. And the lien-creditors, such as participated, having received principal and interest to August 26th 1878, but by payment actually made nearly a year thereafter, it would seem necessarily to follow that out of the lands against which the liens still remained they should be made whole by receiving the interest for the intermediate period.

"But if we give to Carver's Appeal, 8 Norris 276, Tomlinson's Appeal, 9 Id. 254, and Herbst and Buehler's Appeal, Id. 253, this legitimate effect under a fair construction, is it correct to hold that the lien-creditor who received principal and interest to date of confirmation out of former distribution had a lien continuing against the tract then unsold ? We think not, and hold that under those decisions the lien of a judgment must be considered as discharged from all the debtor's lands—satisfied—by a sale of the trust lands

to the extent it may have received of principal and interest, and that the loss of interest incurred by a lien-creditor is consoled by the thought that it is caused by the law, which is pleasantly supposed to injure no one.   And observe, it is distinctly said in Tomlinson's Appeal, *supra*, and as a *ratio decidendi*, that the court has no power to order a sale against the objection of lien-creditors on time, so as unduly to postpone them if stay of execution is ordered.   In that case MERCUR, J., delivering the opinion, said : ' The act requires notice to the lien-creditors, and an opportunity for them to be heard before the sale is ordered.   If it is so ordered as to postpone the payment of liens and deprives the owners of interest thereon for a time longer than may be reasonably required to make distribution of the fund, it cannot well be said that the sale is for the ' manifest interest' of such creditors ; it is not necessary for the purpose of discharging the lien or of giving an undoubted title to the purchaser.   It would therefore be unwarranted by the statute.   The payment of so much of the purchase-money as will be sufficient to satisfy the liens divested by the sale should be acquired at the time of confirmation or soon thereafter.'

"From this it follows that, as warranted by the law, the court should order a cash sale only, or at least a sale equivalent thereto, with payments to be made as soon as distribution can be reported ; and if a lien-creditor expressly or by his silence assents to a sale on postponed payments, he has himself to blame, for it is the law which appropriates, pays and pro tanto satisfies the judgment-creditor as of the date of confirmation.

"These considerations force upon us the conclusion that on a sale of one parcel of the realty of a trust estate, the lien of a judgment seeking payment out of it is discharged to the extent of the sum appropriated to the principal, with interest to the date of confirmation ; to that extent is the judgment paid and satisfied and extinguished, and that in the present case the lien-creditor who has received the principal and interest on former distribution, to the date of confirmation of the sale of the lands which produced the fund against which he claimed, no matter when he actually was paid his money, is presumed to have received it on the day when the law made the appropriation, to wit, August 26th 1878.

"As was well suggested by counsel for a late lien-creditor : Suppose there are judgment-liens against A., owing Whiteacre and Blackacre, and that on a sheriff's sale Whiteacre is sold and the proceeds paid into court for distribution ; that a contest arises which is not finally determined until the Supreme Court has closed the gate, when a lien-creditor will receive his principal, with interest to date of sale only ; could the lien-cred-

itor issue execution and sell Blackacre to recover interest he lost pending the contest over the Whiteacre fund?

" We therefore hold that the claim for interest out of this fund upon judgments which received principal and interest in full to date of confirmation out of the other fund must necessarily be disallowed.

" 2. The next question raised relates to the distribution of the fund, $1151.13, made up of interest, rent and royalty on coal. At the time of the former distribution the assignees were chargeable with interest which they were entitled to receive upon the purchase-money realized from the sales of real estate which had then been made by them and with rents and royalty. The amount was then before us to be distributed. The fund now before us is made up to a large extent of interest heretofore received upon the deferred payment distributed by the former report. The items constituting the fund have been separated so as, to afford opportunity for exception to our ruling upon the point made, which is :

" How is this accrued interest upon purchase-money to be distributed?

" It is not disputed, and we think cannot be, that the fund with the exception probably of the items of rent and royalty, being produced by the proceeds of real estate, accretions to that fund should belong to it and be distributed with it to the lien and not to the unsecured creditors. But as to the method of application to the liens these different positions were taken, according with the different interests of the claimants :

" 1. The early lien creditors contended that it should be applied to liens at the time of the assignment in the order of their priority until they should have been made whole of the interest lost between the date of confirmation of first sales and the date of actual payment.

" 2. The later lien creditors claimed that it should be applied to all the liens participating in the former fund pro rata their several amounts on date of confirmation, on the ground that it should be treated as a fund produced by an investment made by order of court, and that in such case it would be applied to the pro rata benefit of all lien creditors participating in the principal fund.

" 3. The latest lien creditors insisted that it should go to the liens not paid in full by the former distribution, on the ground that those liens which had received principal and interest in full to date of confirmation of sale were then wholly satisfied, and those which had received only part payment were satisfied only pro tanto.

" Now, if we are correct in our ruling upon the question first discussed, that is as to whether the first lien creditors should receive out of the present fund interest which they had lost out of the former, then we must disallow the claims made upon the present question by the first and latter lien creditors. Because, if in law

the lien creditors who received principal and interest in full by an appropriation as of date of confirmation were then satisfied, although they had lost interest upon their liens for a period, then undoubtedly they receive nothing further from the estate, either by preference or pro rata. The ruling upon the first question decides points 1 and 2 made on this.

" We determine, therefore, that this fund should be added to the real estate fund proper, and be distributed with it to the liens unpaid by former distribution in the order of their priority.

"Both of these questions are new to us, and do not seem to have been authoritatively settled by the Supreme Court, unless it be by the principles of the cases hereinbefore referred to. We would be pleased, therefore, to have our rulings reviewed by exceptions and corrected if erroneous."

Exceptions were filed to the report of the auditors, and it was alleged they erred in determining that " the interest fund should be added to the real estate fund and be distributed with it to the liens unpaid by the former distribution." The exceptants claimed that the interest fund should be applied pro rata to all those judgments, or to such part of any judgment as would be entitled to payment out of the fund upon which such interest accrued.

The court, Hart, P. J., in passing upon the exceptions, filed the following opinion :

" The argument of the learned counsel for the exceptants is one of great force, and I might be inclined to yield to it, and decree accordingly, if this were a case of first impression. It is contended that as to interest on the real estate fund not accounted for at the date of the first distribution, but which accrued and was paid to the assignees after such distribution, it is to be regarded in equity as an accretion. not to the assigned estate in general, but to the principal fund distributed ; and therefore that the law having appropriated the principal fund, and distributed it, *eo instanti*, that the sale was confirmed—the business of the court, after such confirmation, being, in strictness, not to make, but to ascertain, the legal distribution—any accretions of interest to that fund must belong to the lien creditors to whom the law had distributed the principal in the ratio of the amounts so distributed, respectively, to the whole amount of the principal fund.

" But I am of opinion, with the auditors, that the question has been authoritatively settled against the exceptants in the three recent cases cited by the auditors—but more especially in Tomlinson's Appeal, *supra*. In that case the sale was confirmed on the 24th December 1877, the terms of sale being ten per cent. of the purchase-money to be paid in cash, and the remainder on the 1st April 1878. The auditor allowed Harple, a lien creditor, interest on his judgment to April 1st 1878. The court below confirmed the report ; and on appeal to the Supreme Court

the decree of confirmation was reversed on this single point—the court holding that interest on liens should be computed to the time of confirmation only, and not to the date of the payment of the purchase-money. MERCUR, J., says: " The precise question was ruled in Carver's, Appeal, decided at the present term, *supra*. It was there held that the interest should be computed to the time of final confirmation only. * * * We held it was the confirmation of the sale, and not the payment of the purchase-money, which determines the time when interest-shall cease on liens paid out of the proceeds." To the same effect is Herbst's Appeal, *supra*.

" As already said, I concur with the auditors as to the bearing of these cases upon the question before us. I understand the construction put by the Supreme Court upon the Act of 1876 to be, in effect, that where a judgment creditor has received from the proceeds of sale of real estate the full amount of his claim, with interest to the date of confirmation, he is to be regarded as paid out—his lien gone—his judgment satisfied—and he has no further claim either against the assigned estate or against the assignor himself. The debt is as fully discharged as though the assignee had, on the very day of confirmation, paid him the debt, interest and costs in full, and taken his receipt in satisfaction of the judgment. The truth seems to be, in the light of these authorities, and particularly of Tomlinson's Appeal, that the vice of this proceeding was in the original order to sell on time instead of for cash. And it does not help the matter to say that it was so ordered by general consent of the lien creditors. In this court, hereafter, such time sales will not be allowed, unless it be under very special circumstances and upon very short credit.

" It follows from what has been said that the exception to the report of the auditors must be overruled and the report confirmed finally; and it will be decreed accordingly."

From this decree this appeal was taken.

*John L. Gow* and *I. Y. Hamilton*, for appellants.—The appellants claim that the three cases referred to, which were regarded as of binding authority by the auditors and the court below, do not determine the question presented by the present case. It is true that they decide that interest on judgment liens ceases at the date of confirmation of sale; but the letter of these decisions should not be extended to cover the present case, where a wholly different state of facts exist. The question raised by our appeal is, to whom belongs the interest accruing on purchase-money after confirmation of sale? while in Tomlinson's Appeal there was no interest whatever for distribution, the purchase-money did not bear interest, and the question as to the distribution of an interest fund was not then before this court. The interest in the estate of

15 NORRIS—23

[Brownsville Deposit and Discount Bank's Appeal.]

Azariah Crow commenced to accrue on the day of the confirmation of sale, after the rights of judgment-creditors had all been fixed and vested, and after full effect had been given to the principle of Tomlinson's Appeal. Tomlinson's Appeal leads us to the point where the facts of this case begin, and there is no conflict whatever between those cases and the principle we contend for. Even, as in the present case, where the fund is productive after confirmation of the sale, the principle of Tomlinson's Appeal applies in order to determine when the debtor ceases to pay interest, and also to determine the share of each creditor in the fund. It is obvious that the formulated statement of the principle of the cases referred to has reference to the debtor's rights, and was never intended to be taken so literally as to apply to a case like the present, where the interest accrued after the confirmation of sale ; after the liens were divested ; after the appellants acquired a vested interest in the fund ; after the debtor and creditor both had the full benefit of the appropriation. But the claim of appellants is not without direct precedent. In Cowden's Estate, 1 Barr 284, it is held as follows : " If interest has been made and received on the moneys or any portion thereof made by the sheriff's sale, it shall follow and ·be paid to the parties respectively who shall· be entitled under the decree to receive the principal upon which it shall have been made and received."

In Rice's Appeal, 29 P. F. Smith 208, Mr. Justice PAXSON says : " The interest is the product of the principal. Each of the parties is entitled to interest in exact proportion to his share of the capital earning such interest. So likewise as to the increase of the fund. The rights of the parties to the principal were adjusted as of the day of sale. Since then the fund as a whole has grown or increased a certain amount or percentage, it follows that the share of each creditor entitled to participate in the distribution has grown in a corresponding ·ratio, and he will be entitled to said increase in the same proportion that the amount of principal awarded him bears to the entire. principal of said fund." The interest therefore accruing on the purchase-money after the confirmation of sale must be distributed pro rata to those lien-creditors entitled to the principal, and we therefore respectfully submit that the ᴄourt erred in confirming the auditor's report.

No appearance for appellee.

The judgment of the Supreme Court was entered, November 26th 1880,

PER CURIAM.—It is true, as stated by the learned judge, it has been authoritatively settled that liens divested by a sale made by the assignee of an insolvent, in pursuance of an order of court, cease to draw interest beyond the date of confirmation of the sale

[Brownsville Deposit and Discount Bank's Appeal.]

to be paid out of the sum for which it sold: Carver's Appeal, 8 Norris 276, and Tomlinson's Appeal, 9 Id. 224. The reason is that the money should then be paid and take the place of the land. The creditor whose lien is thus divested is entitled to receive his money. If it is not then paid to him, and is so kept or invested afterwards as to draw interest, it is interest produced by the money to which he was justly entitled, and he is therefore entitled to the interest thus produced. It follows that each lien-creditor who was entitled to share in the fund, for which the land sold, is entitled to share in the interest afterwards produced, in proportion to his share in the fund producing the interest: Cowden's Estate, 1 Barr 267 ; Rice's Appeal, 29 P. F. Smith 208 ; Burkholder's Appeal, 13 Norris 522. The learned judge therefore erred in confirming the report of the auditor as to the distribution of the interest produced by the fund after confirmation of sale.

Decree reversed, and it is ordered that the record be remanded with instructions to decree distribution conformably with this opinion, and that the costs of this appeal be paid out of the fund.